IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | CRIMINAL NO. 20- |
| --- | --- | --- |
| v. | : | DATE FILED: |
| IAN DOUGLAS | : | VIOLATIONS:<br>18 U.S.C. § 371 (conspiracy to pay and receive kickbacks – 1 count)<br>Notice of forfeiture |
| | : | |

# I N F O R M A T I O N

## COUNT ONE

(Conspiracy to Pay and Receive Kickbacks)

THE UNITED STATES ATTORNEY CHARGES THAT:

At all times material to this Information:

**Federal Health Care Benefit Programs**

1. The Federal Employees' Compensation Act ("FECA") provided for payment of workers' compensation benefits to federal employees who suffered an injury, disease or death in the performance of duty. To establish a claim for benefits, a medical condition was required to be causally related to a claimed injury, disease or death. Benefits were only available while a work-related condition continued. The benefits under FECA included continuation of pay for up to 45 calendar days, compensation for lost wages, all necessary medical care, medical supplies, prescription drugs, vocation rehabilitation services, and disability payments. FECA provided coverage for medications necessary to treat symptoms, which were the result of a work-related injury if the medications were prescribed by a doctor and medically necessary.

2. The Department of Labor Office of Workers' Compensation Program ("DOL-OWCP") administered the benefits under FECA. Providers of health care services were required

1

to enroll with DOL-OWCP using Form OWCP-1168 in order to receive a provider identification number and reimbursement under FECA. By completing and submitting Form OWCP-1168, a provider certified that all the federal and state licensure and regulatory requirements applicable to their provider type were satisfied.

3. DOL-OWCP contracted with Affiliated Computer Services ("ACS") to serve as the billing administrator for FECA to provide medical claims processing and payments. In this capacity, ACS received provider enrollment forms from prospective FECA providers, assigned provider numbers, and processed and paid claims for benefits under FECA.

4. All providers were required to enroll with DOL-OWCP through ACS. After the assignment of a provider number, the provider was given access to the ACS online system through which the provider may submit bills, check the status of pending claims, and perform other billing related functions. On each claim, providers were required to identify the services provided. The submission of a claim, and acceptance of payment, by a provider represented that the service for which reimbursement was sought, was performed as described, medically necessary and appropriate, and properly billed in accordance with accepted industry standards. Billing for medically unnecessary services and prescribing unnecessary medications were not within industry standards. All claims were required to be supported by medical evidence.

5. Medicare was a federally-funded health care program that provided benefits to persons who were at least 65 years old or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services ("HHS"). Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries." Medicare was divided into multiple

parts: Part A covered hospital inpatient care, Part B covered physicians' services and outpatient care, Part C was Medicare Advantage Plans, and Part D covered prescription drugs.

6. Medicare was a "Federal health care program" as defined in Title 42, United States Code, Section 1320a-7b(f) and a "health care benefit program" as defined in Title 18, United States Code, Section 24(b).

7. Part D prescription drug benefits were administered by private insurance plans that were funded by Medicare through CMS. Beneficiaries obtained Part D benefits by joining a prescription drug plan operated by private insurance companies (typically called drug plan sponsors) approved by Medicare to administer Part D benefits; or they could join a Medicare Advantage plan that covered both prescription drugs and medical services. Medicare compensated the drug plan sponsors for providing the prescription drug benefit to the beneficiary. Medicare, through CMS, compensated the Medicare drug plan sponsors. Medicare paid the sponsors a monthly fee for each Medicare beneficiary of the sponsors' plans. Such payments were called capitation fees. The capitation fee was adjusted periodically based on various factors, including the beneficiary's medical conditions. In addition, in some cases where a sponsor's expenses for a beneficiary's prescription drugs exceeded that beneficiary's capitation fee, Medicare reimbursed the sponsor for a portion of those additional expenses.

8. A pharmacy could participate in the Part D program by contracting with the plan sponsors, or a Pharmacy Benefit Manager ("PBM"), which provided Medicare Part D coverage. As part of the enrollment application, the provider certified that the provider understood that payment of a claim was conditioned on the claim and the underlying transaction complying with Medicare regulations, Medicare program instructions, the law, and on the provider's compliance with all applicable conditions of participation in Medicare.

9. Medicare required that claims for reimbursement be submitted electronically. Generally, a pharmacy submitted numerous claims simultaneously to a Part D plan for payment. Then, the Part D plan either sent a reimbursement check to the pharmacy or initiated an electronic transfer of funds to the pharmacy's bank.

10. In submitting a claim to Medicare, a health care provider certified, among other things, that the services were actually rendered to the patient and that the services were medically necessary.

**The Defendant and Related Individuals and Entities**

11. Defendant IAN DOUGLAS was an employee of New Tech Medical LLC ("New Tech"), a corporation located in Bala Cynwd, Pennsylvania.

12. Individual 1 was the owner of New Tech.

13. Individual 2 was a doctor of osteopathy. Individual 2 owned and operated a medical practice with two names and locations: Company 1, which was located in King of Prussia, Pennsylvania; and Company 2, which was located in Sewell, New Jersey.

14. Individual 3 was an employee of Company 1 since at least 2013. Individual 3 was also the owner of Company 3, a corporation located in Swarthmore, Pennsylvania.

15. Company 4 was a compounding pharmacy located in Missouri City, Texas. Company 4 was enrolled with DOL-OWCP under provider number 579976400 and FEIN 27-5172571. Company 4 was enrolled with Medicare under provider number 5903530.

16. Individual 4 was a co-owner of Company 4.

17. Individual 5 was a co-owner of Company 4.

**The Kickback Conspiracy**

18. From at least in or about May 2013 until in or about July 2017, the defendant IAN DOUGLAS, together with others, including Individual 1, Individual 2, Individual 3, Individual 4, and Individual 5, conspired to pay and receive illegal heath care kickback payments in exchange for the referral of prescription medications.

   (a) Defendant IAN DOUGLAS, together with others, received kickback payments from Company 4 that were written by Individual 4 for the referral of prescriptions for medications, including compound pain creams, written by Individual 2.

   (b) Defendant IAN DOUGLAS, together with others, paid kickback payments to Individual 2 and Individual 3 to induce them to send prescriptions for medications, including compound pain creams, to Company 4. Specifically, Individual 3 received approximately ten percent of the kickback amount paid to Individual 2.

19. In connection with the kickback scheme from in or about May 2013 to in or about July 2017, Company 4 submitted and caused to be submitted approximately $2,541,263 in claims for medications that were prescribed by Individual 2 to DOL-OWCP and was paid approximately $1,031,285. In connection with the kickback scheme from on or about February 10, 2015 to on or about July 4, 2017, Company 4 submitted and caused to be submitted claims to Medicare Part D for prescriptions for compound medications written by Individual 2, and was paid approximately $63,827.

20. From at least in or about May 2013 to in or about July 2017, in the Eastern District of Pennsylvania, and elsewhere, defendant

**IAN DOUGLAS**

5

knowingly and willfully conspired with others known and unknown, including persons known to the United States Attorney as Individual 1, Individual 2, Individual 3, Individual 4, and Individual 5, to: (1) receive kickbacks, directly and indirectly, overtly and covertly, in return for referring FECA and Medicare beneficiaries to Company 4 for the furnishing of and arranging for the furnishing of items and services for which payment may be made in whole and in part under FECA and Medicare, contrary to Title 42, United States Code, Section 1320a-7b(b)(1); and (2) pay kickbacks, directly and indirectly, overtly and covertly, to persons to induce the referral of FECA and Medicare beneficiaries to Company 4 for the furnishing of and arranging for the furnishing of items and services for which payment may be made in whole and in part under Medicare, contrary to Title 42, United States Code, Section 1320a-7b(b)(2).

## OVERT ACTS

21. In furtherance of the conspiracy and to effect its objects, within the Eastern District of Pennsylvania and elsewhere, the defendant IAN DOUGLAS, together with others, committed and caused to be committed, among others, the following overt acts:

(a) On or about August 31, 2016, defendant IAN DOUGLAS deposited check number 682 in the approximate amount of $4,950 payable to Ian Douglas, drawn on a Citizens Bank account number ending in 2564, an account that was held in the name of New Tech.

(b) On or about June 29, 2016, defendant IAN DOUGLAS deposited check number 639 in the approximate amount of $6,005 payable to defendant DOUGLAS,

drawn on a Citizens Bank account number ending in 2564, an account that was held in the name of New Tech.

All in violation of Title 18, United States Code, Section 371.

## NOTICE OF FORFEITURE

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1. As a result of the violation of Title 18, United States Code, Section 371, and Title 42, United States Code, Section 1320a-7b, set forth in this Information, defendant

**IAN DOUGLAS**

shall forfeit to the United States of America any property, real or personal, that constitutes, or is derived, directly or indirectly, from the gross proceeds traceable to the commission of the offense, including, but not limited to, the sum of $56,872.62.

2. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the Court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b),

incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 18, United States Code, Section 982(a)(7).

_____
WILLIAM M. McSWAIN
United States Attorney
Eastern District of Pennsylvania


ROBERT ZINK
Chief, Fraud Section
Criminal Division

*No. 2020R00245*

# UNITED STATES DISTRICT COURT

Eastern District of Pennsylvania

<u>Criminal Division</u>

THE UNITED STATES OF AMERICA

vs.

IAN DOUGLAS

INFORMATION

18 U.S.C. § 371 (conspiracy to pay and receive kickbacks – 1 count)

Notice of Forfeiture

A true bill.

_____
Foreman

Filed in open court this _____ day,
Of _____ A.D. 20____
_____
Clerk

Bail, $_____